THEODORE MULLEN, PLAINTIFF-RESPONDENT, v. CENTRAL RAILROAD COMPANY OF NEW JERSEY (A CORPORATION OF NEW JERSEY), DEFENDANT-APPELLANT.

Submitted May 15, 1931—Decided October 5, 1931.

Before Justices CAMPBELL, LLOYD and BODINE.

For the plaintiff-respondent, *Francis A. Gordon.*

For the defendant-appellant, *William A. Barkalow* (*DeVoe Tomlinson,* of counsel).

Per Curiam.

This is an appeal from a judgment for $15,000 in favor of the plaintiff in an action brought under the Federal Employers' Liability act.

The plaintiff, Theodore Mullen, had been employed by the Central railroad for about eighteen years. At the time of the accident, he resided in Elizabeth and was employed as netting inspector in night work at the Communipaw round-house. The railroad furnished him a pass which he used for sometime past in commuting from Elizabeth to Jersey City. He had formerly been a boilermaker. There is no dispute that his work was of interstate character—some of the engines he inspected being used in interstate commerce and some in intrastate commerce. On the night of his injury, plaintiff rode the ten-ten p. m. train from Elizabeth to Jersey City, but was not obliged to check in at the Communipaw yard until eleven fifty-nine p. m.

For several years, two so-called deadhead coaches for employes were attached to the ten-ten train. Mullen, and other employes, on boarding the train went directly into one of these coaches. If by any chance, the coach was locked it was opened by a railroad trainman and usually a pass inspector examined passes. Other roundhouse night shift employes boarded the train wherever it made station stops. When the train arrived at Jersey City the train crew would go through the deadhead coaches, but would not disturb the employes occupying the same. Twenty minutes or a half hour later the same engine that brought the train into Jersey City would push it into the yards. The brakeman would remain on the train but the conductor had already reported in. A drill engine would then hook on to the train. Usually there was attached to the drill several cars. The train men would then go back to the terminal and the train made up of the deadhead coaches and the cars attached to the drill engine would be manned by a new crew. This train, or sometime before the accident and on the night in question, was pulled on to a drill track and moved on down the yard. When it reached the Com-

munipaw bridge embankment, it would stop and the workmen employed in the night shift at the Communipaw roundhouse would alight and go up over the embankment to their place of work. The course pursued was of long standing and well known to the railroad employes. No fare was taken nor were passes examined on this ride. The crew on the drill engine would, however, bid the workers, as they got off, good-night, and appear to have known all about the occupation of the deadhead coaches by the plaintiff and other employes. The proofs tend to show that this was the method employed to carry the men to their work.

On the night in question, the train had come to its usual stop at the embankment. Mullen found a vestibule door closed and was passing between two cars in order to alight, when there was a sudden movement of the train. The cars, where he was passing, separated and the plaintiff was thrown under the wheels and his right leg cut off. The train was, of course, always broken on the drill track, but it had, before this occurrence, usually lain at this point five or ten minutes so that the employes could get off. However, instances were cited where the train had been almost immediately cut. The facts proved supported the jury finding that the drill crew did not exercise the care owed to Mullen.

In *Matthison* v. *Payne*, 98 *N. J. L.* 87; *affirmed*, 99 *Id.* 285, a roundhouse employe rode on a work train which carried employes to the vicinity of the roundhouse. On the night he was injured, the train discharged him at a point about a mile from the roundhouse because an engineer had been left behind, and the train was ordered back for him. At this point there happened to be another engine. With the consent of the engineer, the fireman started this engine in order to take the plaintiff to a point nearer the roundhouse. While being so carried, he was injured. It was said: "He was entitled to rely on the custom established by the defendant, that he would be conveyed to his work—that is, to Central Crossing. He was also warranted in relying upon the common practice open to his observation, of firemen operating

the trains in the absence of the engineers, which practice would be tantamount to holding them out as acting within the scope of their employment." It is apparent that the decision rested upon the proof of a custom to carry employes to their place of work, although the means used on the day of the accident was not the regular train, but an engine run by the fireman under instructions from the engineer to carry the plaintiff to a point nearer his work.

In *Symonski* v. *Central Railroad Co.*, 102 *N. J. L.* 271; *affirmed*, 103 *Id.* 508, an employe, furnished with transportation, was on his way to Bayonne station to take a train to his place of work. He was injured while taking a short cut across the track to the station. There was proof of custom so to do. The court said: "There was proof that the plaintiff and other employes had taken the route he took to reach the station, and that this was a common practice covering a period of three or four years. The plaintiff was entitled to take any one of the defendant's passenger trains from Bayonne, stopping at Elizabethport, without payment of fare. There was no proof or intimation that the defendant company ever exercised any control over any of its employes as to their place of residence. In the absence of proof to the contrary, it will be presumed that the choice of residence was left to them. While it is true that the defendant company permitted its employes to be conveyed to and from its shops at Elizabethport by its trains without payment of fare, we think this circumstance is of no vital importance, since it does not appear that the defendant exercised any control over the plaintiff's choice of place of residence, or that the defendant undertook to control or direct the plaintiff as to the means he should use to reach his place of employment. The circumstance that he was allowed to ride, without payment of fare, to and from Elizabethport, is of no more significance that if he had been furnished by his employer with the money to pay for his daily trips to and from his work."

There is no doubt that if Symonski had boarded the train and been negligently injured while on the train or alighting

therefrom the Matthison case would have governed and there would have been recovery. In the present case, the workman was injured while alighting from the car provided or used for a long time for the purpose of taking him to work. He had not left the car at the Jersey City terminal because of the custom to ride to the embankment near the roundhouse. The mere fact that another train was provided for the purpose could make no difference or relieve the railroad from responsibility which it had incurred by permissive use of the means employed.

When Mullen boarded the work train at Elizabeth he was using the means provided by the employer to reach the particular point at which he was to commence work and while he rode in the cars provided for that purpose and was alighting therefrom in the usual manner and at the usual place the employer was under a duty to refrain from negligent injury. It is not to be supposed that the case of *Symonski* v. *Central Railroad Co.*, 102 *N. J. L.* 271, goes beyond the facts there stated and which differ materially from the facts proved in this case and in *Matthison* v. *Payne, supra.*

The other points argued upon this appeal need no special mention. The issues raised by the pleadings and proofs were clearly submitted to the jury. The trial judge did leave it to the jury to inquire whether the plaintiff acted reasonably in accepting the mode of transportation proved, but this, under the proofs, was not harmful.

The judgment will be affirmed, with costs.